**FILED**
**March 22, 2018**
**10:49 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mary Summers | ) Docket No. 2017-06-0811 |
| | ) |
| v. | ) State File No. 17206-2017 |
| | ) |
| BrightSpace Senior Living, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

### Affirmed and Remanded - Filed March 22, 2018

In this interlocutory appeal, the employee reported an injury to her left leg resulting from a fall at work. The employer accepted the leg injury as compensable and initiated medical benefits. Approximately two weeks after the incident, the employee reported that the fall also resulted in injuries to her right shoulder and ribcage. The employer denied benefits for those injuries, asserting they were not caused by the work-related fall. Following an expedited hearing, the trial court concluded the employee satisfied her evidentiary burden of showing she was entitled to a panel of physicians for those injuries and ordered the employer to provide ongoing medical treatment made reasonable and necessary by the work accident. In addition, the trial court determined the medical treatment for those injuries was to be provided by the physician with whom the employee had already established a doctor-patient relationship. The employer has appealed, asserting the trial court applied an incorrect evidentiary standard at the expedited hearing. We affirm the trial court's order and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Gordon C. Aulgur, Lansing, Michigan, for the employer-appellant, BrightSpace Senior Living, LLC

Mary Summers, Hendersonville, Tennessee, employee-appellee, pro se

1

## Factual and Procedural Background

On February 16, 2017, Mary Summers ("Employee") was working as a medical technician for BrightSpace Senior Living, LLC ("Employer"), in Hendersonville, Tennessee. On that date, she was assisting a resident with taking a shower when she lost her balance and fell, striking her left shin on the edge of the bathtub and reaching out with her right arm to catch herself on a shower chair. She did not initially report the incident as she thought she did not need medical treatment. However, four days later, she reported the fall, telling her supervisor that her left leg was aching and burning and was very painful. Employee was offered a panel of medical providers for her leg injury from which she selected CareNow Urgent Care ("CareNow").[1] Employer authorized medical treatment, and on February 21, 2017, Employee was seen by a nurse practitioner at CareNow for lower left leg pain. Following the examination, the nurse practitioner imposed work restrictions until February 28, 2017, and recommended Employee follow up with her primary care provider for an old tibial fracture revealed in x-rays.

On February 22, 2017, Employee consulted her primary care provider, Melanie Lowe, N.P., to discuss the pre-existing tibial fracture. Ms. Lowe referred Employee to Gina Barletta, a physician's assistant with orthopedist Dr. Robert Landsberg. On February 23, 2017, Employee was seen by Ms. Barletta for her left leg pain and "to rule out a chronic old fracture in the lower leg." Employee was out of work from February 23, 2017 until March 1, 2017, due to non-work-related bronchitis. In the interim, Employee returned to CareNow on February 28, 2017 to follow up on her leg injury. None of the medical reports for these four visits for Employee's left leg injury mention shoulder or ribcage complaints.

Upon Employee's return to work on March 1, 2017, she reported to her supervisor that she had also injured her arm and ribcage in the February 16, 2017 incident. Employee testified at the expedited hearing that her delay in reporting her arm and ribcage pain was due to having been ill with bronchitis and unable to work until March 1. Employee's supervisor did not complete an incident report addressing Employee's right arm and ribcage complaints until March 14, 2017. However, it is undisputed that Employee initially reported the arm and ribcage complaints on March 1, 2017. The March 14, 2017 incident report included a section for explaining any lapse between the injury date and the date the incident was reported. A handwritten entry on the incident report stated "original [was] filled out for a left leg shin injury. Have started hurting in [right] rib [and] [right upper extremity] muscle pain."

Employee was seen again by her primary care provider on March 15, 2017. She reported pain in her right ribs and in her right upper arm that, according to the report, had

---

[1] The "Employee's Choice of Physicians" form identifies Care Spot as the provider; however, the medical records reflect the facility name as "CareNow Urgent Care."

"been going on for [three] weeks." The record of this visit indicated Employee reported the pain to have started in her chest two days after her fall and stated Employee was "told in years past that she had a small tear in her right rotator cuff but has not had any issues recently until this last fall." Employee was referred back to Ms. Barletta, the physician's assistant in Dr. Landsberg's office, for treatment of her right shoulder. On the same date, Employer completed a Notice of Denial of Claim for Compensation in which it stated "[w]e respectfully deny any injury to the [r]ight upper extremity or chest/rib area; we deny that the old fracture noted in the [x-rays] were [sic] related to the work injury. We agree to pay for treatment to contusion left lower leg."

Employee returned to Ms. Barletta on March 17, 2017. The record of that visit states "[Employee] is here today with right shoulder pain. It is from the same injury that occurred on February 16, 2017." The report reflects that Employee "never had problems with her right shoulder in the past." She was administered a steroid injection in her right shoulder and scheduled to return on March 31, 2017. At that next visit, Employee reported only temporary relief from the steroid injection and an MRI was recommended. Following the MRI, Employee returned to Ms. Barletta on April 25, 2017. The report of that visit again noted that Employee "denies having any shoulder pain prior to her fall."

Employee continued to receive medical care for her left leg from CareNow. On March 28, 2017, CareNow recommended "[r]eferral to wound management for further care." On April 18, 2017, Employee returned to her primary care provider "for a referral to a wound center per her [workers'] comp." The record of the visit states that "on [March 15] or so the wound went from a bruise on her lower left leg to an open lesion." Employer subsequently provided a panel of medical providers for further care for Employee's leg, and on May 1, 2017, she began treating with Dr. William Davis at TriStar Medical Center. Employee continued treating with Dr. Davis for her leg injury until her wound healed.

On May 2, 2017, Employee filed a petition for benefit determination seeking additional medical care for her shoulder and ribcage injuries. Following the expedited hearing, the trial court issued an order requiring Employer to authorize medical treatment "causally related to [Employee's] February 16, 2017 injury to her arm and/or ribcage." The trial court ordered Employer to authorize treatment "with Rivergate Sports Medicine and Dr. Landsberg" due to Employer's failure to provide Employee a panel of doctors for her shoulder and ribcage complaints. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give

considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

**Analysis**

Although Employer's brief does not specify any issues presented for review as required by Tenn. Comp. R. & Regs. 0800-02-22-.02(2) (2018), we have gleaned the issue from its argument to be whether the evidence preponderates against the trial court's determination that Employee is entitled to medical treatment for her shoulder and ribcage injuries. Employer's argument conflates the evidentiary standard applicable in an expedited hearing with the applicable burden of proof. It argues the trial court should be reversed because it "applied the wrong burden of proof," asserting that "when the correct causation burden of proof is applied [Employee] failed to meet said burden." Employer correctly identifies the evidentiary standard facing an employee at the expedited hearing stage of litigation, citing *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), wherein we held that "an employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits." *Id.* at *9. Additionally, Employer cites *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015), for the proposition that the lesser evidentiary standard announced in *McCord* "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'"

Employer contends the factual circumstances in this case are distinguishable from *McCord* in that, unlike the employer in *McCord*, it complied with its statutory obligations by providing Employee a panel of physicians and appropriate medical treatment once it received notice of Employee's fall and her leg injury. Having met those obligations, Employer argues that the lesser evidentiary standard "for compelling an employer to

4

provide a panel of physician[s] is not applicable," and that "instead[,] [Employee] must meet the burden to establish credible evidence linking her employment to the alleged injuries to her right shoulder and ribcage." In essence, Employer argues that because it met its obligation to provide a panel of physicians and initiated medical care for Employee's leg injury, Employee must prove that her shoulder and ribcage injuries were causally related to the work injury by a preponderance of the evidence to be entitled to medical care for those injuries. Employer asserts the trial court acknowledged the applicable evidentiary standard for establishing causation and correctly determined that Employee did not meet that standard when the court stated Employee "failed to produce clear expert medical evidence linking these injuries to her employment." While the trial court did note Employee's failure to produce medical evidence of causation, the court stated, "[n]onethless, [Employee] does not have to prove causation to establish that [Employer] must provide a panel of physicians."

When an employee alleges multiple injuries arising from a work accident, an employer must decide whether to provide a panel or panels of physicians for selection of one or more appropriate treating physicians for the alleged injuries or contest the compensability of one or more of the employee's claims. Regardless, an employee's burden of proof at the expedited hearing stage remains the same. He or she must come forward with sufficient evidence to convince the trial court he or she is likely to prevail at trial in establishing that the injury in question arose primarily out of and in the course and scope of the employment. Once that burden is met at an expedited hearing, the trial court can order the initiation of temporary disability and/or medical benefits, as appropriate. Tenn. Code Ann. § 50-6-239(d)(1). An employer cannot rely upon the provision of medical benefits for some, but not all, of an employee's claimed injuries as satisfying its statutory obligation to provide medical care for any injury alleged by the employee.

The determinative issue in this case is whether Employee came forward with sufficient evidence from which the trial court could determine she would likely prevail at a hearing on the merits in proving her right shoulder and ribcage injuries arose primarily out of and in the course and scope of her employment. In analyzing the evidence, we presume "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7). Furthermore, as noted above, when reviewing a trial court's factual findings based upon witnesses' testimony, considerable deference must be afforded those determinations when considering issues that hinge on the witnesses' credibility. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014).

Employer asserts that the preponderance of the evidence establishes that Employee did not injure her right shoulder or ribcage in the February 16, 2017 fall. Its argument is twofold. First, Employer argues that Employee's failure to report these injuries to her supervisor until March 1, 2017, and her failure to complain of shoulder or ribcage pain during several medical visits occurring prior to March 1, 2017, are evidence that she did

5

not sustain those injuries. Second, Employer asserts the fact that Employee received medical care for her right shoulder two years prior to her alleged work injuries evidences her work-related injury was limited to her leg. While we agree Employer has presented relevant evidence, we nevertheless find the preponderance of the evidence supports the trial court's determinations.

It is undisputed that Employee fell in the course and scope of her employment on February 16, 2017 while assisting a resident with taking a shower. She testified she fell into the shower and hit her left shin on the tub, stating she "caught on to the shower chair to break [her] fall." In her affidavit she stated that when she reached out for the shower chair, she hit her right rib and right bicep. At the time of her fall, she thought she might be sore, but she thought she was "okay, just a bump." Due to her leg injury becoming very painful, she reported the fall to Employer, but only reported complaints that her leg was aching and burning and was very painful. However, Employee's testimony that she reported arm and ribcage complaints two weeks after the fall on March 1, 2017 is unrefuted. Although Employer questions Employee's credibility, the trial court found her to be "confident, forthcoming, reasonable and honest in her testimony." The trial court disagreed with Employer's assertion that Employee's failure to mention any injury other than her leg in the initial medical visits suggests her injury was limited to her leg. The court found Employee's explanation that "she did not immediately realize the extent of her injuries from the fall due to the more obvious leg injury" to be reasonable. In our view, the evidence supports the trial court's determination.

Employee admitted during cross-examination that she sought treatment for her right shoulder in 2009. She was confronted with the history she reported in March 2017 indicating she denied having any shoulder pain before her fall, and she was questioned about medical reports from 2015 indicating she received treatment for her right shoulder, including physical therapy. She admitted she sought medical treatment for right shoulder complaints before her 2017 fall, and she acknowledged that she had shoulder problems "from 2013 to 2015." She testified that when she started work as a medical technician in 2013 she was getting aches and pains in her right shoulder from pulling a medical cart at work and sought treatment. She stated that after going to physical therapy for a few sessions in 2015, the pain stopped and she ended the therapy. She further testified that, thereafter, she did not have any pain with her right shoulder and had no further problems until she fell in February 2017. The trial court addressed Employee's prior shoulder treatment and Employee's testimony, stating "she credibly testified that her pain resolved before the February 16[, 2017] fall at work." The trial court concluded that "the evidence presented at this time weighs in favor of [Employee's] assertion that she suffered arm/ribcage pain from the [2017] incident." Again, in our view, the evidence supports the trial court's determination that Employee came forward with sufficient evidence to meet her burden of proof at the expedited hearing stage.

6

Accordingly, based upon our review of the record, we conclude the preponderance of the evidence supports the trial court's implicit determination that Employee would likely prevail at trial in establishing that her right shoulder and ribcage injuries resulted from the February 16, 2017 fall.[2]

**Conclusion**

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's determination that Employer must provide reasonable and necessary medical treatment for Employee's right shoulder and ribcage injuries with Dr. Landsberg. The trial court's order is affirmed and the case is remanded to the trial court for any further proceedings as may be necessary. Costs on appeal are taxed to Employer.

---

[2] The trial court authorized ongoing reasonable and necessary medical treatment with Employee's unauthorized physician, Dr. Landsberg. Employer has not raised this determination as an issue on appeal. Accordingly, we do not address it.